**D**AVIS **W**RIGHT **T**REMAINE LLP
865 S. FIGUEROA ST.
SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
TELEPHONE (213) 633-6800
FAX (213) 633-6899

ALONZO WICKERS IV (State Bar No. 169454)
  alonzowickers@dwt.com
NICOLAS A. JAMPOL (State Bar No. 244867)
  nicolasjampol@dwt.com
MEGAN K. LOLLAR (State Bar No. 313268)
  meganlollar@dwt.com

Attorneys for Defendant
MARJAN TELEVISION NETWORK
LTD. (also erroneously sued as MANOTO)

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MANOUCHER BIBIYAN, an individual<br><br>Plaintiff,<br><br>vs.<br><br>MARJAN TELEVISION NETWORK, LTD., a United Kingdom corporation; MANOTO, an unknown business entity in the United Kingdom; and DOES 1 through 20, inclusive,<br><br>Defendants. | Case No. 2:18-cv-01866-DMG-MRW<br><br>**DEFENDANT'S NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFF'S COMPLAINT**<br><br>Date:    Friday, July 27, 2018<br>Time:    9:30 a.m.<br>Crtrm:   8C |

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

PLEASE TAKE NOTICE that on July 27, 2018 at 9:30 a.m., or as soon thereafter as the matter may be heard in Courtroom 8C of the United States District Court for the Central District of California, First Street Courthouse, 350 West First Street, Los Angeles, California 90012, defendant Marjan Television Network Ltd. ("Marjan") will and hereby does move this Court for an order dismissing the complaint filed by plaintiff Manoucher Bibiyan ("Plaintiff").

This motion is made pursuant to Federal Rule of Civil Procedure 12(b)(2) for lack of personal jurisdiction on the grounds that Marjan has not performed any act or consummated any transaction within the forum, has not purposefully availed itself of the privileges of conducting activities in the forum, and has no relevant contacts with the forum.  The assertion of personal jurisdiction over Marjan based on the allegations in Plaintiff's complaint would be unreasonable and inconsistent with the requirements of due process.

This motion is based on this notice of motion, the memorandum of points and authorities, the declaration of Kayvan Abbassi, the notice of lodging, and all other matters of which this Court may take judicial notice, the pleadings, files, and records in this action, and on any argument heard by this Court.

Pursuant to Local Rule 7-3, Marjan's counsel met and conferred with Plaintiff's counsel on June 22, 2018, regarding the grounds for this motion.


DATED: June 29, 2018               Davis Wright Tremaine LLP

                                   By: /s/ Nicolas A. Jampol
                                       Nicolas A. Jampol

                                   Attorneys for Defendant
                                   MARJAN TELEVISION NETWORK,
                                   LTD. (also erroneously sued as
                                   MANOTO)

# **TABLE OF CONTENTS**

I.    INTRODUCTION ................................................................................... 1

II.   FACTUAL BACKGROUND ................................................................. 2

      A.    Marjan's Programming ............................................................. 2

      B.    Plaintiff's Alleged Content ...................................................... 3

III.  MARJAN'S CONTACTS WITH CALIFORNIA ARE
      INSUFFICIENT TO ESTABLISH PERSONAL JURISDICTION. ............. 3

      A.    Marjan's Contacts with California Do Not Give Rise to General
            Jurisdiction ............................................................................. 4

      B.    Marjan's Contacts with California Do Not Give Rise to Specific
            Jurisdiction ............................................................................. 5

            1.    Marjan Has Not Purposefully Availed Itself of the Forum. ...... 6

                  a.    Marjan's Alleged Conduct Was Not "Expressly
                        Aimed" at California. ...................................................... 6

                  b.    Marjan's Alleged Conduct Did Not Cause Harm
                        that Marjan Knew Would Be Suffered in California. ...... 9

            2.    Plaintiff's Alleged Harm Did Not "Arise Out Of" Any
                  Activities by Marjan in California. ......................................... 10

            3.    Personal Jurisdiction Over Marjan Would Be
                  Unreasonable. ........................................................................ 11

                  a.    Marjan Did Not Purposefully Inject Itself into the
                        Forum. ............................................................................ 11

                  b.    Litigating in California Would Be Unreasonably
                        Burdensome on Marjan. ................................................. 12

                  c.    Forcing Marjan to Litigate in California Would
                        Conflict with the Sovereignty of the UK. ..................... 13

                  d.    California's Interest in this Dispute Does Not
                        Override the Remaining Factors. ................................... 13

                  e.    The Witnesses and Evidence Are in the UK. ................ 14

                  f.    Plaintiff's Choice of Forum Carries Little Weight. ....... 14

                  g.    The UK Is an Adequate Alternative Forum ................... 14

i

h.    The Balance of These Factors Weighs Strongly in Favor of Marjan and Against the Exercise of Jurisdiction. .................................................. 15

IV.    CONCLUSION ............................................................ 16

# <u>TABLE OF AUTHORITIES</u>

**Cases**

*Amoco Egypt Oil Co. v. Leonis Navigation Co.*,
   1 F.3d 848 (9th Cir. 1993) ................................................................. 5

*Anhing Corp. v. Viet Phu Inc.*,
   2013 WL 12132045 (C.D. Cal. Dec. 18, 2013) ................................ 13

*Asahi Metal Indus. Co. v. Superior Court*,
   480 U.S. 102 (1987) .......................................................................... 13

*Axiom Foods, Inc. v. Acerchem Int'l, Inc.*,
   2015 WL 12658234 (C.D. Cal. Sept. 11, 2015), *aff'd*, 874 F.3d
   1064 (9th Cir. 2017) .................................................................... 8, 10

*Brayton Purcell LLP v. Recordon & Recordon*,
   606 F.3d 1124 (9th Cir. 2010) ........................................................... 6

*Burger King Corp. v. Rudzewicz*,
   471 U.S. 462 (1985) ....................................................................... 4, 6

*Calder v. Jones*,
   465 U.S. 783 (1984) ........................................................................... 6

*Callaway Golf Corp. v. Royal Canadian Golf Ass'n*,
   125 F. Supp. 2d 1194 (C.D. Cal. 2000) ......................... 12, 13, 14, 15

*Caracal Enterprises LLC v. Suranyi*,
   2017 WL 446313 (N.D. Cal. Feb. 2, 2017) ..................................... 10

*Casualty Assurance Risk Ins. Brokerage Co. v. Dillon*,
   976 F.2d 596 (9th Cir. 1992) ........................................................... 12

*Chaiken v. VV Publ'g Corp.*,
   119 F.3d 1018 (2d Cir. 1997) .......................................................... 12

*CollegeSource, Inc. v. AcademyOne, Inc.*,
   653 F.3d 1066 (9th Cir. 2011) ........................................................... 4

*Core-Vent Corp. v. Nobel Industries AB*,
   11 F.3d 1482 (9th Cir. 1993) ........................................... 11, 12, 14, 15

iii

*Dale Tiffany, Inc. v. Meyda Stained Glass, LLC*,
  2017 WL 4417585 (C.D. Cal. Oct. 2, 2017)..................................................6, 8, 9

*DFSB Kollective Co. v. Bourne*,
  897 F. Supp. 2d 871 (N.D. Cal. 2012) ...............................................................8, 9

*Doe v. Unocal Corp.*,
  248 F.3d 915 (9th Cir. 2001) ..................................................................................2

*Erickson v. Nebraska Mach. Co.*,
  2015 WL 4089849 (N.D. Cal. July 6, 2015).......................................................8, 9

*Glencore Grain Rotterdam v. Shivnath Rai Harnarain Co.*,
  284 F.3d 1114 (9th Cir. 2002) .........................................................................10, 15

*Goodyear Dunlop Tires Operations v. Brown*,
  131 S. Ct. 2846 (2011) ............................................................................................4

*Gullen v. Facebook.com, Inc.*,
  2016 WL 245910 (N.D. Ill. Jan. 21, 2016)..............................................................8

*Imageline, Inc. v. Hendricks*,
  2009 WL 10286181 (C.D. Cal. Aug. 12, 2009) ...............................................11, 12

*International Shoe Co. v. State of Washington*,
  326 U.S. 310 (1945)..................................................................................................4

*Mega Distrib. Int'l v. Mattoon Rural King Supply, Inc.*,
  2015 WL 12776592 (C.D. Cal. Dec. 1, 2015)..........................................................7

*Pebble Beach Co. v. Caddy*,
  453 F.3d 1151 (9th Cir. 2006) .......................................................................passim

*Perkins v. Benguet Consol. Mining Co.*,
  342 U.S. 437 (1952)..................................................................................................4

*Rano v. Sipa Press, Inc.*,
  987 F.2d 580 (9th Cir. 1993) ...........................................................................4, 13

*Schwarzenegger v. Fred Martin Motor Co.*,
  374 F.3d 797 (9th Cir. 2003) .............................................................................4, 6

*Toys "R" Us, Inc. v. Step Two, S.A.*,
  318 F.3d 446 (3d Cir. 2003)....................................................................................8

iv

*Walden v. Fiore*,
    134 S. Ct. 1115 (2014) ................................................................... 7, 8, 9

*World-Wide Volkswagen Corp. v. Woodson*,
    444 U.S. 286 (1980) ........................................................................ 6

**Statutes**

California Code of Civil Procedure § 410.10 ........................................ 3

**Constitutional Provisions**

United States Constitution .................................................................. 3, 6

v

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION

Marjan Television Network is a United Kingdom-based television network that creates and broadcasts Persian-language entertainment programming for Iranians living in Iran.  Marjan delivers its programming to Iranians by satellite transmission directed to the Middle East, which enables Iranians with satellite dishes to enjoy content outside the confines of Iran's state-censored media regime.[1] Marjan's programming is supported by advertisements that, like its content, are broadcast to Iran and tailored toward an Iranian audience.  Marjan does not broadcast in the United States, does not conduct any business in the United States, and has no presence whatsoever in the United States.[2]

There is no plausible basis for asserting personal jurisdiction over Marjan in California based on the allegations in the complaint.  Plaintiff attempts to sidestep jurisdictional requirements by making vague allegations about Marjan's website, which is accessible to anybody with an internet connection.  It has been firmly established, however, that the ability to access content through the internet does not somehow give rise to personal jurisdiction anywhere in the world, and courts have made clear that the digital age does not render due process obsolete.  Marjan's satellite broadcast cannot be accessed from the United States, its programming and advertising are not directed to the United States, and its target audience is not in the United States.

---

[1] While satellite dishes are illegal in Iran, they are sold on the black market and are common throughout the country.  Abbassi Decl. ¶5.

[2] While Marjan maintains a website and mobile application through which users with internet access can view some of Marjan's content at no cost, these platforms host the same content directed at the same audience as the satellite broadcast – i.e., Iranians living in Iran.  Abbassi Decl. ¶7.  These platforms do not generate any income, do not feature advertising of any kind, and are in no way directed or aimed at the United States.  Abbassi Decl. ¶7.

While Marjan is prepared to defend this case on the merits, the case should not proceed in California, which may be where Plaintiff resides, but otherwise has no connection whatsoever to Marjan or its alleged conduct. Marjan thus respectfully requests that this Court dismiss Plaintiff's complaint for lack of personal jurisdiction.

## II.    FACTUAL BACKGROUND

### A.    Marjan's Programming

Marjan is incorporated and based in the United Kingdom, where it produces content for Iranians living in Iran. Abbassi Decl. ¶ 2.[3] Its flagship channel is Manoto, on which Marjan broadcasts Persian-language programming of interest to its Iranian audience. Abbassi Decl. ¶ 3. Marjan broadcasts its programming by satellite, on a signal directed to the Middle East, which can be accessed by viewers with a satellite dish in the Middle East (including Iran) and parts of Europe and Asia. Abbassi Decl. ¶ 4. While satellite dishes are technically illegal in Iran, they are common throughout the country, and allow Iranians to view content outside of the state-censored media that is available in Iran. Abbassi Decl. ¶ 5. According to Reuters, Marjan's offerings have "irked Iran's Islamic government," and the network "appears to be a favourite target for Iran's censors."[4] *See also* Abbassi Decl. ¶ 6. For those in Iran without a satellite dish, Marjan maintains a website and mobile application that are available to users with an internet connection (wherever they reside), but the content is the same as the satellite broadcast, which is for Iranians in Iran. Abbassi Decl. ¶ 7.

---

[3] In determining whether personal jurisdiction exists, courts may consider admissible evidence contained in declarations. *See, e.g., Doe v. Unocal Corp.*, 248 F.3d 915, 922 (9th Cir. 2001), *rev'd on other grounds*.

[4] *See* https://uk.reuters.com/article/uk-britain-iran-tv/london-tv-channel-dips-a-toe-into-iran-culture-war-idUKBRE83H0QX20120418.

Marjan has no presence in California.  Its business operations are conducted in the UK, where it produces content, owns the equipment to broadcast its signal, and where its employees reside.  Abbassi Decl. ¶ 8.  Its satellite feed is not accessible from the United States, it does not advertise in the United States, has no employees or offices in the United States, and its content is not licensed for distribution in the United States.  Abbassi Decl. ¶ 9.  Marjan does not direct its activities or programming *in any manner* in the United States, and does not profit *in any way* from activities in the United States, because there are none.  Abbassi Decl. ¶ 10.

**B.    Plaintiff's Alleged Content**

Plaintiff contends that Marjan infringed his purported copyrights in twenty-nine videos that he allegedly made "to celebrate Iranian culture and perpetuate it through media, music, and speech" (the "Videos").  Compl. ¶ 8.  In reality, the ownership of the Videos is unclear and Marjan will contend at the appropriate time that it did not infringe any copyrights that Plaintiff owns.

The Videos were distributed throughout the 1980s and 1990s around the world by third parties, including on videocassettes, DVDs, through distributors with whom Marjan contracted to license content of interest to its audience, and, later, on the internet.  Abbassi Decl. ¶ 11.  Nonetheless, when Marjan learned in a cease-and-desist letter that Plaintiff claimed ownership over the Videos, it immediately endeavored to remove all identified content from its channel.  Abbassi Decl. ¶ 12.

**III.    MARJAN'S CONTACTS WITH CALIFORNIA ARE INSUFFICIENT TO ESTABLISH PERSONAL JURISDICTION.**

Where, as here, there is no federal statute that governs personal jurisdiction, the Court must apply the law of the forum state.  Under California law, personal jurisdiction may be asserted over an out-of-state defendant (or foreign defendant) in any manner not inconsistent with the due process guarantees of the United States Constitution.  Cal. Code Civ. Proc. § 410.10.

In the absence of a traditional basis for asserting jurisdiction over a defendant (i.e., physical presence, domicile, or consent), due process requires that a non-resident defendant have "certain minimum contacts with [the forum state] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *International Shoe Co. v. State of Washington*, 326 U.S. 310, 316 (1945) (citation omitted). There are two varieties of this contacts-based personal jurisdiction: "general" and "specific" jurisdiction.

If a defendant's contacts with the forum state are sufficiently substantial and continuing, it may be subject to general jurisdiction – that is, subject to suit on any matter, including those not arising out of in-forum activity. *See Perkins v. Benguet Consol. Mining Co.*, 342 U.S. 437, 447-48 (1952). If a defendant's contacts are not sufficient to establish general jurisdiction, it still may be subject to specific jurisdiction where the claims or causes of action arise out of or relate to the defendant's contacts with the forum. *See Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985). As explained below, Marjan's contacts with California – or rather, the lack thereof – are insufficient to subject it to general or specific jurisdiction.

## A.   Marjan's Contacts with California Do Not Give Rise to General Jurisdiction.

Though a defendant's contacts with a forum state can be the basis for general jurisdiction, it only exists where those contacts are either "substantial," or "continuous and systematic." *Rano v. Sipa Press, Inc.*, 987 F.2d 580, 587-588 (9th Cir. 1993). "The standard for general jurisdiction 'is an exacting standard, as it should be, because a finding of general jurisdiction permits a defendant to be haled into court in the forum state to answer for any of its activities anywhere in the world.'" *CollegeSource, Inc. v. AcademyOne, Inc.*, 653 F.3d 1066, 1074 (9th Cir. 2011) (quoting *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 801 (9th Cir. 2003)). *See also Goodyear Dunlop Tires Operations v. Brown*, 131 S. Ct.

4

2846, 2851 (2011) (general jurisdiction "to hear any and all claims against" foreign defendants is only appropriate when defendants' contacts "render them essentially at home in the forum State").  Both the Supreme Court and the Ninth Circuit have regularly declined "to find general jurisdiction even where the contacts were quite extensive."  *Amoco Egypt Oil Co. v. Leonis Navigation Co.*, 1 F.3d 848, 851 n.3 (9th Cir. 1993).

Plaintiff cannot meet this extremely strict standard to establish that Marjan has sufficient ongoing contacts with California to establish general jurisdiction. Indeed, Marjan has *no* contacts with California, let alone "substantial" or "continuous and systematic" contacts.  Marjan is not incorporated or registered to do business in California, it does not solicit or do business in the state, it does not pay taxes in the state, and it has no offices, employees, or property in the state.  In short, there is no basis whatsoever for the exercise of general jurisdiction over Marjan in California.

**B.      Marjan's Contacts with California Do Not Give Rise to Specific Jurisdiction.**

To establish specific jurisdiction, a plaintiff must establish that:  "(1) the defendant has performed some act or consummated some transaction within the forum or otherwise purposefully availed himself of the privileges of conducting activities in the forum, (2) the claim arises out of or results from the defendant's forum-related activities, and (3) the exercise of jurisdiction is reasonable." *Pebble Beach Co. v. Caddy*, 453 F.3d 1151, 1155 (9th Cir. 2006).  "If any of the three requirements is not satisfied, jurisdiction in the forum would deprive the defendant of due process of law." *Id.*  Importantly, the "plaintiff bears the burden of satisfying the first two prongs" of this analysis. *Id.*  Here, *none* of the three requirements are satisfied – let alone all three.

### 1.    Marjan Has Not Purposefully Availed Itself of the Forum.

To satisfy the "purposeful availment" requirement, a plaintiff must be able to demonstrate that the defendant had "a 'substantial connection' with the forum State," such that it "should reasonably anticipate being haled into court there." *Burger King Corp.*, 471 U.S. at 474-75 (quoting *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980)).  To ensure that "random," "fortuitous," or "attenuated" contacts do not cause a defendant to be haled into a jurisdiction, the U.S. Constitution requires that a defendant intentionally direct its conduct toward the forum state. *Id.* at 475.

In cases alleging copyright infringement, courts employ a "purposeful direction analysis" based on the "effects test" derived from *Calder v. Jones*, 465 U.S. 783 (1984).  *See, e.g., Dale Tiffany, Inc. v. Meyda Stained Glass, LLC*, 2017 WL 4417585, at *5 (C.D. Cal. Oct. 2, 2017).  To satisfy this test, the defendant "must have (1) committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to be suffered in the forum state."  *Id.* (citing *Brayton Purcell LLP v. Recordon & Recordon*, 606 F.3d 1124, 1128 (9th Cir. 2010)).

### a.    Marjan's Alleged Conduct Was Not "Expressly Aimed" at California.

Specific jurisdiction is not permitted under the "effects test" because Plaintiff cannot show that Marjan engaged in intentional acts that were *expressly aimed* at the forum state of California.  This "express aiming" requirement does not simply mean an act "with foreseeable effects in the forum state," but instead demands that the plaintiff establish that the defendant engaged in "individualized targeting" of forum residents. *Pebble Beach*, 453 F.3d at 1157.  *See also Schwarzenegger*, 374 F.3d 797 at 807 (explaining that while "[i]t may be true that Fred Martin's intentional act eventually caused harm to Schwarzenegger in California, and Fred

Martin may have known that Schwarzenegger lived in California," that did not confer jurisdiction because the defendant's acts were not aimed at California).

Importantly, the mere allegation that a defendant infringed the copyright of a plaintiff from the forum state is insufficient on its own to establish specific jurisdiction.  The U.S. Supreme Court recently clarified "that mere injury to a forum resident is not a sufficient connection to the forum," and that "[r]egardless of where a plaintiff lives or works, an injury is jurisdictionally relevant only insofar as it shows that the defendant has formed a contact with the forum state." *Walden v. Fiore*, 134 S. Ct. 1115, 1125 (2014).  The court explained that the "proper question is not where the plaintiff experienced a particular injury or effect but whether the defendant's conduct connects him to the forum in a meaningful way." *Id.* Importantly, courts must look "to the defendant's contacts with the forum State itself, not the defendant's contacts with persons who reside there." *Id.* at 1122 Contacts sufficient to allow specific jurisdiction "must arise out of contacts that the defendant *himself* creates with the forum State." *Id.* (internal quotation marks omitted) (emphasis in original).

Consistent with these principles, courts in the Ninth Circuit *routinely* reject the application of specific jurisdiction in infringement cases even where the plaintiff resides in the forum state.  *See, e.g., Pebble Beach*, 453 F.3d at 1156 (in trademark-infringement action by California golf course resort, rejecting specific jurisdiction over foreign defendant because his "actions were not expressly aimed at California"); *Mega Distrib. Int'l v. Mattoon Rural King Supply, Inc.*, 2015 WL 12776592, at *5 (C.D. Cal. Dec. 1, 2015) (in trademark-infringement action by California corporation, rejecting specific jurisdiction over out-of-state defendant given "no indication that [defendant] has specifically targeted residents of California, or made any overtures to the California market in particular").[5]

---

[5] While some cases find specific jurisdiction based, at least in part, on allegations of copyright infringement, the "common thread" in those cases is that

The opinion in *Dale Tiffany* is instructive.  In that case, the defendant denied "having had any knowledge of plaintiff's copyright prior to receiving the cease-and-desist letter," and "immediately took remedial steps in an abundance of caution." 2017 WL 4417585, at *6.  On that basis, the court rejected the application of personal jurisdiction over the defendant even though the plaintiff was based in California, alleged that defendants committed willful copyright infringement, and the defendants operated a website accessible to California residents, sold allegedly infringing products to distributors that did significant business in California, and hired a sales representative in California.  *Id.* at *5-7.

Similarly, courts from across the country routinely reject the application of specific jurisdiction based solely on an allegation that the defendant operates a website that is accessible from the forum state.  *See, e.g., DFSB Kollective Co. v. Bourne*, 897 F. Supp. 2d 871, 880 (N.D. Cal. 2012) (noting that "[o]ne rule, however, is clear" from the jurisprudence regarding specific jurisdiction: "A defendant has not purposefully availed himself of the privilege of conducting activities in a forum state merely because he operates a website which can be accessed here"); *Gullen v. Facebook.com, Inc.*, 2016 WL 245910, at *2 (N.D. Ill. Jan. 21, 2016) (explaining that having an interactive website, which "hardly rules out anything in 2014," does not "open a defendant up to personal jurisdiction in every spot on the planet where that interactive website is accessible"); *Toys "R" Us, Inc. v. Step Two, S.A.*, 318 F.3d 446, 454 (3d Cir. 2003) ("[T]he mere operation of a

---

the "defendants knew not only that plaintiffs did business in a particular state, but also that the intellectual property at issue belonged to plaintiffs."  *Axiom Foods, Inc. v. Acerchem Int'l, Inc.*, 2015 WL 12658234, at *4 (C.D. Cal. Sept. 11, 2015), *aff'd*, 874 F.3d 1064 (9th Cir. 2017) (emphasis omitted).  Moreover, at least one district court found that the U.S. Supreme Court's decision in *Walden* implicitly overruled any authority suggesting that allegedly infringing the copyright of someone the defendant knows to reside in the forum state is sufficient to give rise to specific jurisdiction.  *Erickson v. Nebraska Mach. Co.*, 2015 WL 4089849, at *4 (N.D. Cal. July 6, 2015) (explaining that the Supreme Court "held that it would be a violation of the defendant's due process rights to be forced to submit to personal jurisdiction based merely on his or her knowledge of the plaintiff's location").

commercially interactive web site should not subject the operator to jurisdiction anywhere in the world.").[6]

Here, Marjan has not individually targeted any forum resident, including Plaintiff, and has not engaged in any other conduct that could constitute "individualized targeting" of California residents. And like the plaintiff in *Dale Tiffany*, Marjan did not have any knowledge of Plaintiff's purported copyrights prior to receiving the cease-and-desist letter, after which it immediately endeavored to remove all identified content from its channel. Abbassi Decl. ¶ 12.[7] Accordingly, because Plaintiff cannot show that Marjan's alleged conduct was "expressly aimed" at California, specific jurisdiction does not attach.

### b. Marjan's Alleged Conduct Did Not Cause Harm that Marjan Knew Would Be Suffered in California.

Plaintiff independently cannot establish that specific jurisdiction is permitted under the "effects test" because he cannot show that Marjan aimed an act at California that "caused harm, the brunt of which is suffered and which the defendant knows is likely to be suffered in the forum state." *Caddy*, 453 F.3d at 1156. As explained above, Marjan had no knowledge that Plaintiff claimed

---

[6] While courts may look to the interactivity of a defendant's website in assessing contacts with a forum state, even a highly interactive website does not allow specific jurisdiction if the website does not "target" the forum state. *See DFSB Kollective*, 897 F. Supp. 2d at 881 (rejecting specific jurisdiction). Here, even if Marjan's website constitutes an interactive website, it does not target California in any manner whatsoever.

[7] Plaintiff's complaint attempts to manufacture jurisdiction by arguing that he broadcast the Videos with "Los Angeles County-based television broadcasters whose broadcast signal did not leave Southern California," and that Marjan or a third party must have copied the Videos from those broadcasts. *See* Compl. ¶ 7. In reality, the content at issue in this case was distributed in many different ways throughout the world, Abbassi Decl. ¶ 11, but more importantly, the contention that jurisdiction is appropriate if an allegedly infringed work originated from the forum state is unsupported and, if accepted, would conflict with all of the precedent described above, including *Walden*. *See Erickson*, 2015 WL 4089849, at *4 (finding no personal jurisdiction even with out-of-state defendant admitting that it copied California-based plaintiffs' photos from plaintiffs' website).

9

ownership over the Videos or that Plaintiff resided in California.  Abbassi Decl. ¶ 12.  Indeed, immediately upon receiving the cease-and-desist letter, Marjan endeavored to remove the identified content from its network.  Abbassi Decl. ¶ 12.  As a result, Marjan did not know and could not have known that any purported harm would be suffered in California.  *See, e.g.*, *Axiom Foods*, 2015 WL 12658234, at *5 (holding that "the lack of evidence" that the intellectual property at issue "belonged to companies doing business in California precludes a finding that Defendant caused harm that it knew was likely to be suffered in California"); *Caracal Enterprises LLC v. Suranyi*, 2017 WL 446313, at *3 (N.D. Cal. Feb. 2, 2017) (rejecting personal jurisdiction where "the only claimed contact" with the forum state was that the defendant had allegedly misappropriated software licensed by the California-based plaintiff, even if the defendant knew that the plaintiff was based in the state).

## 2.  Plaintiff's Alleged Harm Did Not "Arise Out Of" Any Activities by Marjan in California.

In addition to Plaintiff's inability to establish that Marjan purposefully availed itself of the privileges of conducting activities in the forum, he also cannot establish that his claims arise out of or result from Marjan's forum-related activities, and thus no personal jurisdiction exists for that independent reason.  In assessing whether alleged harm arises out of forum conduct, the Ninth Circuit applies a "but for" test, meaning that the plaintiff "must show it would not have been injured 'but for' [defendant's] contacts with California."  *Glencore Grain Rotterdam v. Shivnath Rai Harnarain Co.*, 284 F.3d 1114, 1123 (9th Cir. 2002).  Here, the alleged conduct is the broadcasting of content from the UK to the Middle East, and thus has no relationship to California.  Indeed, Marjan did not engage in *any* activities relating to California, and thus Plaintiff's claims by definition cannot have arisen from such activities.

10

### 3. Personal Jurisdiction Over Marjan Would Be Unreasonable.

Even if Plaintiff can establish that Marjan purposefully availed itself of the privileges of conducting business in California and that his claims arise out of Marjan's purported forum-related activities – which he cannot – this Court should still decline to exercise personal jurisdiction over Marjan because such jurisdiction would be unreasonable. *See Pebble Beach*, 453 F.3d at 1155. In making this determination, courts consider the following factors: (1) the extent of the defendant's purposeful injection into the forum; (2) the defendant's burdens from litigating in the forum; (3) the extent of conflict with the sovereignty of the defendant's state; (4) the forum state's interest in adjudicating the dispute; (5) the most efficient judicial resolution of the controversy; (6) the importance of the forum to the plaintiff's interest in convenient and effective relief; and (7) the existence of an alternative forum. *Core-Vent Corp. v. Nobel Industries AB*, 11 F.3d 1482, 1487-1488 (9th Cir. 1993). The balance of these factors weighs strongly in favor of a finding that personal jurisdiction over Marjan would be unreasonable in this case.

### a. Marjan Did Not Purposefully Inject Itself into the Forum.

As described above, Marjan does not engage in business in California, has no office or employees in California, is not licensed or registered to do business in California, and does not pay taxes in California. In *Core-Vent,* the court determined that the defendants' contacts with the forum state (visiting California on numerous occasions, and writing articles defaming the plaintiff, which was known to be a California corporation) were sufficient to satisfy the purposeful availment test, yet were so attenuated that this factor still weighed in favor of finding against the exercise of personal jurisdiction. *Id.* at 1488. *See also Imageline, Inc. v. Hendricks,* 2009 WL 10286181, at *5 (C.D. Cal. Aug. 12, 2009) (finding that defendant's interjection into California's affairs was "slight" despite selling allegedly infringing products to California residents through eBay because the listings "did not target California, but simply went to California residents who turned out to be the eBay

purchasers"); *Callaway Golf Corp. v. Royal Canadian Golf Ass'n*, 125 F. Supp. 2d 1194, 1205 (C.D. Cal. 2000) (holding that defendant did not interject itself into California because "defendant's Web site nor defendant's programs and products are targeted to Californians," and no evidence "indicating defendant's intentional appeal to Californians in particular"). Here, Marjan's alleged contacts with the forum state are even further attenuated than in *Core-Vent* or *Imageline*. Marjan did not purposefully inject itself into the California market and took no specific actions directed at or in California. This factor thus weighs strongly in Marjan's favor, and against a finding of personal jurisdiction.

### b.   Litigating in California Would Be Unreasonably Burdensome on Marjan.

As a UK-based company, Marjan would suffer hardship if it were forced to defend this action here. In *Casualty Assurance Risk Ins. Brokerage Co. v. Dillon*, 976 F.2d 596, 600 (9th Cir. 1992), the Ninth Circuit held that, even if the defendant had the minimum contacts with the forum jurisdiction sufficient for purposeful availment or direction, it nevertheless would be unreasonable to ask the defendant to travel 7,000 miles to defend an action based on such limited contacts. *See also Chaiken v. VV Publ'g Corp.*, 119 F.3d 1018, 1029 (2d Cir. 1997) (finding that an Israeli newspaper would shoulder a "significant burden" if forced to defend itself in Massachusetts, where the paper had "no meaningful presence").

Similarly, it would be unreasonable to ask Marjan to travel over 5,000 miles to a forum where it has no "meaningful presence," to defend a lawsuit that is not based on any conduct occurring within California. All of Marjan's witnesses reside in the United Kingdom, and any relevant supporting documentation is there. *See Chaiken*, 119 F.3d at 1029 (holding that the "interest in obtaining the most efficient resolution of controversies" is not advanced when "parties, witnesses, and evidence are all located" overseas). Thus, this factor also weighs strongly in Marjan's favor.

12

### c.     Forcing Marjan to Litigate in California Would Conflict with the Sovereignty of the UK.

As the U.S. Supreme Court explained decades ago, "[g]reat care and reserve should be exercised when extending our notions of personal jurisdiction into the international field." *Asahi Metal Indus. Co. v. Superior Court*, 480 U.S. 102, 115 (1987). The Ninth Circuit has similarly explained that "[w]here the defendant is a resident of a foreign nation rather than a resident of another state within our federal system, the sovereignty barrier is higher." *Callaway*, 125 F. Supp. 2d at 1206 (internal quotation marks omitted). *See also Rano*, 987 F.2d at 588 ("We have held that litigation against an alien defendant requires a higher jurisdictional barrier than litigation against a citizen from a sister state."). Because Marjan is based in the United Kingdom, this factor weighs strongly in Marjan's favor.

### d.     California's Interest in this Dispute Does Not Override the Remaining Factors.

While Plaintiff is a resident of California, this factor does not necessarily weigh in his favor. *See, e.g., Callaway*, 125 F. Supp. 2d at 1207 (in unfair-competition and defamation lawsuit brought by a California company against a Canadian organization, holding this factor weighed in defendant's favor because California had "little interest" in "regulating the policy-making decisions behind rules administered by a Canadian organization in Canada"); *Anhing Corp. v. Viet Phu Inc.*, 2013 WL 12132045, at *6-7 (C.D. Cal. Dec. 18, 2013) (in lawsuit brought by a California company, explaining that while the court had "an interest in preventing trademark infringement and consumer confusion in California," the defendant's actions "are confined to Vietnam"). Moreover, even if this factor tips in Plaintiff's favor, this alone does not outweigh the many other factors that courts consider in determining whether jurisdiction is reasonable under the circumstances.

### e.    The Witnesses and Evidence Are in the UK.

This factor focuses on "where the witnesses and the evidence are likely to be located." *Core-Vent*, 11 F.3d at 1489.  All of Marjan's employees and potential witnesses are based in the United Kingdom, and thus the factor weighs in Marjan's favor.  *See Callaway*, 125 F. Supp. 2d at 1207 (finding that this factor weighed slightly in defendant's favor where all defendant's witnesses were located outside of the United States, even where the bulk of plaintiff's witnesses and evidence were located in California).

### f.    Plaintiff's Choice of Forum Carries Little Weight.

The plaintiff's choice of the forum in which the suit was filed "carries little weight in the overall jurisdictional analysis." *Callaway*, 125 F. Supp. 2d at 1208.  Plaintiff could bring this lawsuit the United Kingdom, and cannot show that his claims could not be effectively remedied there.  *Core-Vent*, 11 F.3d at 1490.  Even if such a suit may be somewhat inconvenient for Plaintiff, "neither the Supreme Court nor [the Ninth Circuit] has given much weight to inconvenience … no doctorate in astrophysics is required to deduce that trying a case where one lives is almost always a plaintiff's preference" but "mere preference on the part of the plaintiff for its home forum does not affect the balancing." *Id*.

### g.    The UK Is an Adequate Alternative Forum.

In assessing this factor, the plaintiff has the burden of "proving the unavailability of an alternative forum." *See Core-Vent*, 11 F.3d at 1490 (finding adequate alternative forum existed because "the claims against the Swedish doctors could possibly be brought in Sweden," and concluding that defendant "has not met its burden of proving that it would be precluded from suing the doctors in Sweden").  Here, Plaintiff cannot demonstrate that the United Kingdom is an inadequate forum for his suit, and thus this factor weighs in Marjan's favor.  *See Calloway*, 125 F. Supp. 2d at 1207 (rejecting argument that Canadian forum was inadequate even where the plaintiff would not be entitled to a jury trial in Canada

14

and discovery would be "extremely limited," because those concerns "do not show that Canada is unable to provide a remedy to plaintiff").

### h. The Balance of These Factors Weighs Strongly in Favor of Marjan and Against the Exercise of Jurisdiction.

As demonstrated above, even assuming that Plaintiff had established the first two prongs of the test for specific jurisdiction, Marjan has met its burden of demonstrating that the exercise of personal jurisdiction nonetheless would be unreasonable.

In *Core-Vent*, for example, which involved a California plaintiff and Swedish defendants, the Ninth Circuit found that the exercise of jurisdiction would be unreasonable. 11 F.3d at 1490. Specifically, the court concluded that the defendants' limited contacts with California, the burden they would have had to bear to defend themselves in California, the sovereignty of a foreign nation, and the availability of an alternate forum weighed in favor of the defendants, and that California's interest in protecting its residents and the efficiency of the home forum weighed in favor of the plaintiff. *See id.* at 1488-90. Balancing these factors, the court held that the defendants "presented a compelling case that the exercise of jurisdiction would not comport with fair play and substantial justice and would thus be unreasonable." *Id.* at 1490. *See also Glencore*, 284 F.3d 1114 (holding that exercise of jurisdiction would be unreasonable over Indian defendant even assuming minimum contacts necessary for jurisdiction).

Here, it would be unreasonable to force Marjan to defend a lawsuit in a court thousands of miles away, especially given that it has no connection to the forum other than the fact that residents could technically access Marjan's website to view its programming (which is produced in the UK and broadcast to the Middle East for its Iranian audience). This is particularly true given that Marjan is "a resident of a foreign nation rather than a resident of another state within our federal system," and thus "the sovereignty barrier is higher." *Callaway*, 125 F. Supp. 2d at 1206.

15

Marjan has no offices, agents, or employees in California, does not do business in California, is not licensed to do business in California, and pays no taxes in California. In short, Marjan's conduct is not expressly aimed at California in any way whatsoever, and asserting personal jurisdiction would be highly unreasonable and, as such, constitute a violation of due process.

## IV.   CONCLUSION

For all of the reasons set forth above, Marjan respectfully requests that this Court dismiss Plaintiff's complaint in its entirety.


DATED: June 29, 2018                DAVIS WRIGHT TREMAINE LLP
                                    ALONZO WICKERS IV
                                    NICOLAS A. JAMPOL
                                    MEGAN K. LOLLAR

                                    By: /s/ Nicolas A. Jampol
                                        Nicolas A. Jampol

                                    Attorneys for Defendant
                                    MARJAN TELEVISION NETWORK,
                                    LTD. (also erroneously sued as
                                    MANOTO)